Justice BEASLEY
dissenting.
For the reasons stated in my dissent in State v. Brewington,_ N.C._,_S.E.2d_(2013), I respectfully dissent. I would affirm the decision of the Court of Appeals granting defendant a new trial. I would hold that, as prohibited by the Confrontation Clause under Bullcoming v. New Mexico,_U.S._, 131 S. Ct. 2705 (2011), the expert testimony in this case amounts to mere surrogate testimony being used to explicitly introduce critical evidence of an element of the charged offense, and that this constitutional violation was not harmless beyond a reasonable doubt. The majority relies on State v. Nabors, 365 N.C. 306, 718 S.E.2d 623 (2011), to hold that defendant’s use of the word “cocaine” alleviates any error presented by the failure to offer a competent expert witness to confirm the identity of the substance at issue: Nabors directly conflicts with the rulings in State v. Llamas-Hernandez, 363 N.C. 8, 673 S.E.2d 658 (2009) (per curiam), and State v. Ward, 364 N.C. 133, 694 S.E.2d 738 (2010). As such, Nabors should be narrowly construed. Contrary to the majority’s position, this case does not fall within the narrow bounds of Nabors.
This case is distinguishable from Nabors in several respects. First, the standard of review in Nabors was different from that pre *70 sented here. In Nabors this Court reviewed for plain error. 367 N.C. at 311-13, 718 S.E.2d at 626-27. Thus, the burden was on the defendant to prove that the jury probably would have reached a different result absent the error. State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). This case, however, requires review under the harmless beyond a reasonable doubt standard.
When violations of a defendant’s rights under the United States Constitution are alleged, harmless error review functions the same way in both federal and state courts: “[BJefore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.” In other words, an error under the United States Constitution will be held harmless if “the jury verdict would have been the same absent the error.” Under both the federal and state harmless error standards, the government bears the burden of showing that no prejudice resulted from the challenged federal constitutional error.
Id. at 513, 723 S.E.2d at 331 (alteration in original) (citations omitted). Thus, here the State bears the burden to show that no harm resulted from the error. The difference between these standards is marked and is determinative here.
Second, Nabors involved an appeal from the trial court’s denial of defendant’s motion to dismiss for insufficient evidence on the bases that the State failed to provide chemical testing and that all identification was based on lay opinion testimony by the officers. 365 N.C. at 310-11, 718 S.E.2d at 626-27. Part of this review mandates that “both competent and incompetent evidence that is favorable to the State ... be considered by the trial court in ruling on a defendant’s motion to dismiss.” Id. at 312, 718 S.E.2d at 627 (emphasis added) (citations omitted). By contrast, the challenge here asserts a Confrontation Clause violation — the deprevation of a fundamental right. We do not need to, and in fact should not, consider incompetent evidence in determining whether defendant suffered any harm as a result of this violation of his constitutional right to confrontation.
Under the standard of review in Nabors, the Court held that the lay witness testimony by defendant’s friend that the substance was cocaine was “an independent basis for upholding the trial court’s denial of the motion.” Id. at 313, 718 S.E.2d at 627. While one might assume this to be the same as stating that it is sufficient to provide lay witness testimony regarding the chemical identity of the crack cocaine *71 at issue here, the Court then directly knocked this assumption down by declaring that it would not decide whether testing is required. Id. The Court in Nabors found it unnecessary to do so precisely because the standard of review was plain error: “Assuming arguendo that admission of the lay testimony was error, defendant cannot satisfy his burden of showing plain error inasmuch as his own evidence established that the substance sold was cocaine.” Id. Because this case does not involve plain error review, motions to dismiss, or consideration of incompetent evidence, this Court must declare whether chemical testing is required. As I discuss in my dissent in Brewington, this declaration has already been made by this Court in State v. Ward.
In State v. Ward this Court extended the requirement of chemical testing to verify the identity of any alleged controlled substance. 364 N.C. at 143-44, 694 S.E.2d at 744-45. While the facts in Ward specifically addressed tablets, the language used to state the rule and the rationale behind the rule apply generally to controlled substances governed by N.C.G.S. § 90-95. Id. Specifically, this Court expressed concern regarding counterfeit substances, which are subject to a lesser punishment by statute:
By imposing criminal liability for actions related to counterfeit controlled substances, the legislature not only acknowledged that their very existence poses a threat to the health and well-being of citizens in our state, but that a scientific, chemical analysis must be employed to properly differentiate between the real and the counterfeit.... As such, a scientifically valid chemical analysis of alleged controlled substances is critical to properly enforcing the North Carolina Controlled Substances Act.
364 N.C. at 143-44, 694 S.E.2d at 745.
To hold defendant accountable for his belief that the substance in question was indeed cocaine directly nullifies the rationale presented in Ward that a substance may be alleged to be either real or counterfeit, but in fact be the opposite. Accordingly, defendant’s belief whether a substance is real or counterfeit is irrelevant to the State’s burden. When the State is required to provide evidence of chemical testing to verify the identity of a substance but fails to comply with the Confrontation Clause, a defendant’s belief or assertion that the drug is real cannot, under the precedent of this Court, make the error harmless. The submission of chemical testing through the proper expert’s testimony would determine the severity of the defendant’s sentence irrespective of his belief regarding the chemical identity of the substance.
*72 This finding that an error would not be harmless, of course, begs the question of whether defendant’s Sixth Amendment right to confrontation was violated. Consistent with my dissenting opinion in Brewington, I submit that it was. Just as in Brewington, here the State presented a surrogate expert to testify conclusively about which tests were actually performed, how they were actually performed, and the results they actually yielded, despite having never examined the substance in question herself. Further, the opinion the surrogate expert purported to independently convey depended upon visual observations not made by the surrogate herself, predominantly that the substance was of a particular weight. This testimony directly violates the rule in Bullcoming._U.S. at_, 131 S. Ct. at 2710 (“The question presented is whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification — made for the purpose of proving a particular fact — through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. We hold that surrogate testimony of that order does not meet the constitutional requirement.” (emphasis added)). In contrast to Brewington, however, but precisely consistent with Bullcoming, here the report of the testing analyst was actually admitted into evidence, although under the pretense of serving as illustrative evidence of the surrogate expert’s independent opinion. This is a most egregious violation of Bullcoming and of the Confrontation Clause. As discussed above, this violation could not be harmless because without any scientifically valid evidence regarding the chemical identity of the substance, the State is unable to show whether the substance in question was real or counterfeit, thus making the State unable to prove that defendant was guilty of the charged offense of felony possession of a controlled substance, as opposed to the lesser offense of felony possession of a counterfeit substance.
Lastly, this result does not conflict with Nabors. In Nabors this Court stated:
While the State has the burden of proving every element of the charge beyond a reasonable doubt, when a defense witness's testimony characterizes a putative controlled substance as a controlled substance, the defendant cannot on appeal escape the consequences of the testimony in arguing that his motion to dismiss should have been allowed.
365 N.C. at 313, 718 S.E.2d at 627 (emphasis added) (citations omitted). There the consequences of the testimony were that incom *73 petent evidence would be used against defendant and that the plain error standard would be applied. Here the consequences of the testimony are that defendant believed the substance was cocaine and that lay witness testimony was provided contending that the substance was actually cocaine. Defendant cannot escape these consequences. But these consequences do not prove the element of possession of actual cocaine as required by this Court’s precedent and enactments of the General Assembly. Although, defendant cannot escape that he assisted the State’s case, neither may the State escape that it did not present competent evidence on an essential element of the crime. Because the burden falls on the State here, and not on the defendant— as it did in Nabors — -this difference is sufficient to alter the outcome.